142 So. 254

## MEYERS v. MERAUX.

No. 31444.

April 25, 1932.

Rehearing Denied May 23, 1932.

Dresner & Dresner, of New Orleans, for appellant.

Neil A. Armstrong, Jr., and Emmet Alpha, both of New Orleans, for appellee.

## OVERTON, J.

Plaintiff is a real estate agent. He acquired two options in succession, at a cost of $500 each, on the same property, which consisted of a plantation in the parish of Orleans, known as Beka Plantation, to purchase it from defendant, the first option expiring on July 4, 1926, and the second on November 4 of the same year. According to the first option plaintiff was to pay $70 an acre for the property, and, according to the second, $75 an acre. Both prices were subject to a deduction of 5 per cent., and this, whether plaintiff purchased the property himself or sold it to another, which latter he evidently hoped to do. About 6 weeks following the expiration of these options, plaintiff wrote defendant as follows:

"As per conversation over phone, I submitted your Beka Plantation to Mr. Alfred Danziger and Mr. L. Gus Elfer. I advised you were asking $75 an acre, that you had refused $60 per acre and might entertain an offer of $65 per acre.

"If any of the above parties take up matter with you, kindly refer them to me.

"Mr. Alfred Danziger purchased the Upper Magnolia Plantation from me which I sold at $40 per acre. * * *"

Three days later, plaintiff wrote defendant as follows:

"I am working with Mr. C. G. Holifield, who has a prospect. Should he or any other approach you, will appreciate it if you would refer them to me.

"The writer has been sick for the past four or five months, but is recuperating now. I would appreciate it if you would give me a chance to regain the money I lost on your options.

"I am phoning you today to send me an exact description of the property, especially the number of acres and the distance of the river frontage. In answering the question today I told party I thought you had about one thousand acres and one mile river front. How many acres are cleared? So I can show the asking price, would you mind writing me a letter showing a price of $75 per acre, including 5% commission."

Two days after the last quoted letter was written, namely, on December 23, 1926, defendant was in the law office of his attorney, Neil A. Armstrong, Jr. At that time plaintiff, in a conversation with Mr. Armstrong over the telephone asked for 6 months' additional time in which to sell the property. Mr. Armstrong replied that defendant could not allow that much time. Mr. Armstrong was then requested by plaintiff to tell defendant to do the best he could in the way of time. On the day of this conversation, Mr. Armstrong, as the attorney for defendant, wrote plaintiff a letter reading as follows:

"With reference to your letters of December 18, and 21, addressed to Mr. Leon A. Meraux, (defendant) regarding the Beka Plantation, this is to advise that Mr. Meraux will list this property with you sixty (60) days from date at $75 per arpent." Then follows two paragraphs giving a description of the property, and an explanation as to why the area now approximates 1,200 arpents.

Plaintiff made no response verbally or in writing to this letter. Within the 60-day period, mentioned in it, and approximately 30 days after the letter was written, defendant, through a real estate agent other than plaintiff, sold the property to Mr. Alfred D. Danziger, whom plaintiff referred to in one of his letters as a person to whom he had submitted the property, for the sum of $42,000, less than half the price at which defendant had authorized plaintiff to offer it, and paid the agent his commission. At this time the efforts, made by plaintiff, to sell to Danziger, consisted of two interviews had after the options had expired and before the receipt of Meraux's letter, and an attempted interview immediately following the receipt of that letter, of which last defendant had no knowledge.

Plaintiff knew nothing of the sale or of the steps taken to effect it until he saw notice of it in one of the daily papers. When he read this notice, he took up the matter with Meraux, and endeavored to obtain 5 per cent. on the amount of the sale, or $2,100, as his commission, on the theory that Meraux had listed the property with him, and had defeated his efforts to effect a sale by wrongfully taking it out of his hands and selling it, at a reduced price, to one plaintiff was en-

deavoring to sell the property to, of which endeavors Meraux was notified in plaintiff's letter, seeking the listing of the property. Failing in this endeavor to get the commission claimed, plaintiff instituted the present suit.

The defense to the suit is a denial that any contract existed between plaintiff and defendant, listing the property with the former for sale; that all that defendant did, towards effecting such a contract, was to offer to list the property for sale with plaintiff for a period of 60 days, after the expiration of the options, which offer plaintiff failed to accept, although he had ample time within which to have done so before the property was sold through another to Danziger, and a denial that plaintiff's connection with the matter entitles him to recover.

■ To entitle plaintiff to recover, he must have had a contract with defendant, listing the property for sale with him. Plaintiff had no such contract. The two letters, written by plaintiff, show an offer upon his part to list the property for sale at $75 an acre, on a 5 per cent. commission, for an indefinite time. This was modified, however, by the conversation over the telephone, in which plaintiff, after having been refused 6 months' time, asked Armstrong to tell Meraux to do the best he could for him in the way of time. This request was met by Armstrong's letter, in behalf of Meraux, in which he said that he would list the property with plaintiff for 60 days from the date of the letter at $75 an arpent. This offer of Meraux to list the property for 60 days at $75 an arpent required acceptance by plaintiff within a reasonable time. Plaintiff was not bound to accept the 60-day period, or such period as Meraux might allow, simply because he asked Armstrong to tell Meraux to do what he could in the way of time. What Meraux was able to do in the way of time might not have been satisfactory to plaintiff, for, among other reasons, plaintiff might not have felt justified in undertaking the sale of the property within that period. Armstrong's letter, in behalf of Meraux, should be regarded as a new proposition or offer, requiring acceptance. Meraux, as we judge from his evidence, acted upon the hypothesis, which we think he had a right to do, that the offer, a reasonable time having elapsed since the making of it, had not been accepted by plaintiff verbally or otherwise.

■ The case of Meyers v. Meraux, 169 La. 712, 125 So. 864, cited by plaintiff, cannot be relied on as deciding to the contrary with respect of this ruling. There, the present case was before this court on a judgment sustaining an exception of no cause of action, and the judgment was set aside, the exception overruled, and the case remanded for trial. The acceptance vel non of the offer was not mentioned or considered by the court in that case. It was merely assumed, without saying so, that there was a valid contract between the parties. The case, aside from the fact that the decree is only an interlocutory one, is not binding on the parties litigant, on the question of acceptance, considered here for the first time.

There was judgment below rejecting plaintiff's demand.

The judgment is affirmed.